UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

JESSICA BIGHAM,                      )
                                     )
        Plaintiff,                   )        Jury Demanded
                                     )
v.                                   )        No. _____
                                     )
CLEVELAND CITY BOARD OF              )
EDUCATION,                           )
                                     )
        Defendant.                   )

## COMPLAINT

Plaintiff sues Defendant and shows unto the Court as follows:

## I. JURISDICTION AND VENUE

1.      The jurisdiction of this Court is invoked by Plaintiff pursuant to 28 U.S.C. §1332, as the matter in controversy exceeds the value of $75,000, and there is complete diversity of citizenship among the parties to this matter.

2.      The actions giving rise to this Complaint occurred in Bradley County, Tennessee, and venue is proper in this district pursuant to 28 U.S.C. § 1391.

## II. NATURE OF PROCEEDING

3.      This action is brought to secure redress for violation of the Public Employee Political Freedom Act of 1980 (hereinafter referred to as "PEPFA"), codified at Tenn. Code Ann. § 8-50-601 et seq.  This action seeks relief in the form of back pay, prejudgment interest, reinstatement or front pay in lieu of reinstatement, emotional and reputational damages, and attorney fees.

### III. THE PARTIES

4.      Plaintiff is a resident of Fannin County, Georgia.

5.      Defendant is a local education agency located in Bradley County, Tennessee, that provides public education to children residing within the City of Cleveland, Tennessee.

6.      Plaintiff is a "public employee," and Defendant is a "public employer" for purposes of PEPFA as set forth in Tenn. Code Ann. § 8-50-602.

### IV. RELEVANT FACTUAL ALLEGATIONS

7.      Plaintiff Jessica Bigham, Ed.D. has a stellar academic and professional history with over 20 years in the field of education.

8.      Since August 2013, Dr. Bigham has been employed by the Defendant Cleveland City Board of Education (hereinafter referred to as "Cleveland City Schools").  She was hired in August 2013 as Instructional Facilitator at Mayfield Elementary.  In August 2018, Dr. Bigham was promoted to Mayfield Elementary Assistant Principal.  In August 2024, she was again promoted to Mayfield Elementary Principal.

9.      Over the past 13 years, Dr. Bigham's performance evaluations have been strong. Even her most recent year-end performance evaluation completed by Cleveland's Director of Schools, Dr. Jeff Elliott, was solid.

10.      During her employment tenure with Cleveland City Schools, Dr. Bigham has never received a documented performance concern.

11.      Mayfield Elementary has experienced numerous maintenance problems within the past five years.  In particular, the school's geothermal system has failed to keep the building cool in the hot months and warm in the cold months.  Within the past five years, over 400 maintenance tickets have been submitted by various teachers and administrators, including Dr. Bigham.  In

2

addition to a failing HVAC system, the school experienced a long-standing roof leak, which caused a hole in the gym floor.

12.     Dr. Bigham raised numerous concerns about these maintenance issues with both Dr. Elliott and Director of Operations Hal Taylor, whose responsibility covers facility maintenance.  Unfortunately, the maintenance problems persisted, which placed the health and safety of students and teachers at risk.

13.     On April 28, 2026, the Cleveland City Schools held a Facilities Meeting at Mayfield Elementary.  Several school board members, who are elected public officials, attended this meeting, as did Dr. Bigham, Dr. Elliott, and Mr. Taylor.

14.     Toward the end of the Facilities Meeting, one school board member addressed to Mr. Taylor a concern about the Mayfield gym floor hole.  Mr. Taylor claimed ignorance of the problem, stating, "It wasn't on my radar."  At that point, Dr. Bigham interjected and explained to the six school board members in attendance that the gym floor hole was certainly on Mr. Taylor's radar.  She then explained that there were numerous maintenance work tickets submitted for the roof, as well as the failing HVAC system.

15.     The Facilities Meeting was then suspended while Dr. Bigham and several school board members walked to the gym to view the damaged floor and roof.  While viewing the damage, school board members Andy Lay (Facilities Committee Chair) and Matthew Coleman requested Dr. Bigham to provide them with information about the past maintenance work tickets submitted. Dr. Bigham explained to them in detail the history of maintenance problems, repeated requests, and lack of response to those requests.

16.     Approximately three weeks later, Mr. Coleman advised Dr. Bigham that he and other school board members had confronted Dr. Elliott about the ongoing maintenance problems

at Mayfield and the administration's inadequate response to those requests.  As Mr. Coleman explained, Dr. Bigham's maintenance concerns were putting a financial "squeeze" on Dr. Elliott's plans, which Dr. Elliott expressed his displeasure.

17.     On May 20, 2026, Dr. Bigham met with Dr. Elliott for the scheduled purpose of conducting her end-of-year performance review.  Dr. Elliott began the meeting by asking, "Did anything ever happen with you and Hal [Taylor]?  I don't think he liked the gym floor and roof leak, but he's supposed to have someone come out and fix your roof."

18.     Dr. Elliott then stated, "I don't know what I'm going to do with you.  And honestly, I don't know where you want to be."  Dr. Bigham indicated confusion as to what he was hinting. Dr. Elliott responded that there might be two open positions for her next year – Assistant Principal or High School English Teacher.  When Dr. Bigham still looked bewildered, he added, "Well, you know, we've had conversations [hinting about performance consultations]."  Dr. Bigham denied having any performance conversations or anything remotely close to performance discussions. Finally, Dr. Elliott admitted, "Sometimes you're real feisty and know how to ruffle people's feathers."

19.     Dr. Elliott ended the short meeting by stating that he would think about what he was going to do next.  During this meeting, Dr. Elliott never provided Dr. Bigham's evaluation or mentioned it even though her evaluation was the stated purpose of the meeting.

20.     Several hours after the meeting, Dr. Bigham sent an email to Dr. Elliott noting her concern about his uncertainty in rehiring her as Principal.  She reiterated that she had not received any indication through evaluations, formal feedback, improvement plans, or documented concerns that her performance was considered deficient.  In addition, she asked him for clear examples of how her performance was concerning.

21. The next day, Dr. Elliott responded by email that feedback and evaluation information would be forthcoming soon.

22. Five days later, on May 26, 2026, Dr. Elliott completed Dr. Bigham's end-of-year performance evaluation, which was overall satisfactory, with only one out of 17 Level of Overall Effectiveness ("LOE") categories marked as "2," which means below expectations. Five categories were scored as "4" (above expectations), and the remaining 11 categories were marked as "3" (at expectations).

23. On May 28, 2026, Dr. Elliott informed Dr. Bigham that she was not being retained as Principal of Mayfield Elementary, but rather she was being transferred to an English Teacher position at Cleveland High School. He gave no feedback or reason for this decision. Dr. Bigham stated that the decision was in retaliation for raising concerns at the April 28th Facilities Meeting. Dr. Elliott did not respond.

24. Because she needed employment and insurance benefits for her family, Dr. Bigham reluctantly accepted the English Teacher position. This demotion results in a pay difference of $32,675 per year. Additionally, because of the adverse employment action, Dr. Bigham lost one month of her Principal's salary, which is valued at $10,006.15, for the month of July.

25. Moreover, the demotion has harmed Dr. Bigham's professional reputation. On June 17, 2026, the Cleveland City Schools posted on its website an announcement that Dr. Keri Miles had been named new Principal at Mayfield Elementary. No mention was made of Dr. Bigham or why she would no longer continue as Principal. Since this public announcement, Dr. Bigham has received numerous inquiries from the public regarding her demotion, some of which questioned whether she had committed some undisclosed wrongdoing.

5

## V. LEGAL CLAIM

PEPFA Violation

26. PEPFA provides that "[n]o public employee shall be prohibited from communicating with an elected public official for any job-related purpose whatsoever." Tenn. Code Ann. § 8-50-602(a). Furthermore, under PEPFA, a public employer cannot "discipline, threaten to discipline or otherwise discriminate against an employee because such employee exercised that employee's right to communicate with an elected public official." Tenn. Code Ann. § 8-50-603(a).

27. Dr. Bigham, a public employee of Defendant, a public employer, communicated with elected school board members at the April 28, 2026 Facilities Meeting for a job-related purpose, i.e., to raise concerns about the school facility's multiple serious maintenance problems that affect the health and safety of students and teachers.

28. Because of her aforementioned communications with elected school board members, Defendant took an adverse action against Dr. Bigham, i.e., demotion from the position of Principal of Mayfield Elementary to English Teacher at Cleveland High School, in violation of PEPFA.

## VI. DAMAGES

29. As a result of the wrongful actions of Defendant as described above, Plaintiff has suffered both financially and emotionally. In particular, Plaintiff has lost and will continue to lose wages and valuable employee benefits. In addition to the financial loss Plaintiff has sustained, she has suffered emotional grief and reputational harm because of Defendant's illegal actions.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays as follows:

6

a.	That the Court issue and serve process on Defendant and require Defendant to answer within the time prescribed by law;

b.	That Plaintiff be awarded judgment for damages for lost salary and benefits which she has lost from the date of Defendant's discriminatory actions through the date of trial;

c.	That the Court issue an injunction requiring Defendant to transfer Plaintiff to the next available Principal position, or in the alternative, to award front pay in lieu thereof;

d.	That Plaintiff be awarded additional compensatory damages, including damages for humiliation, embarrassment, mental anguish, and reputational injury;

e.	That Plaintiff be awarded attorney fees, prejudgment interest, costs of this action, litigation expenses, and such other relief as the Court deems proper to effectuate the remedial purposes of PEPFA; and

f.	Plaintiff demands a jury to try all claims and issues triable by a jury.

**MIKEL & HAMILL PLLC**

By:	s/ *Doug S. Hamill*
Doug S. Hamill, BPR No. 22825
Attorney for Plaintiff
620 Lindsay Street, Suite 200
Chattanooga, TN 37403
(423) 541-5400
dhamill@mhemploymentlaw.com

7